SCHNEIDER *v.* BLADES.[1]

MUNICIPAL CORPORATIONS—BOARD OF HEALTH—COMPENSATION OF EMPLOYÉS—POWERS OF COUNCIL.

Act No. 10, Pub. Acts 1895, created a new board of health for the city of Detroit, and provided that the existing board should turn all of its assets over to the new one, which should assume and pay all lawful claims outstanding against the old board. Each board was empowered to appoint all of its employés, and to fix their compensation, which was to be paid them upon vouchers drawn by the board. *Held*, that the power so conferred included the authority to pass upon all claims for compensation; and that, where the claim of an

---

[1] Rehearing denied March 3, 1896.

employé of the old board had been allowed at a certain amount by the new, the common council had no power to review such action, and increase the amount of the award.

*Certiorari* to Wayne; Lillibridge, J. Submitted December 17, 1895. Decided December 24, 1895.

Louis Schneider applied to the circuit court for a writ of *mandamus* to compel Francis A. Blades, controller of the city of Detroit, to draw his warrant upon the city treasurer in payment of relator's claim. From an order granting the writ, respondent brings *certiorari*. Reversed.

*Charles Flowers* and *John E. Moloney*, for relator.

*John J. Speed*, for respondent.

McGRATH, C. J. This is *certiorari* to review an order granting a *mandamus*. Act No. 10 of the Public Acts of 1895 created a board of health for the city of Detroit, and provided that, immediately upon the appointment of the board provided for, the board which had existed should turn over to the new board all the property and assets formerly under the control of the old board. It further provided that the new board should assume and pay all lawful claims and liabilities existing, at the time of the passage of the act, against the existing board of health of said city. Petitioner was in the employ of the old board, and claimed a balance due him for extra work of $1,000. He presented his claim to the new board, which allowed it at $252. ` The new board was without funds, and reported its liability for this claim, which, with others, aggregated several thousand dollars, to the common council, and asked that an appropriation be made to pay said claims. The council made an appropriation of $7,121.09, and ordered the same to be placed to the credit of the public health fund, to be used in the payment of said claims, but providing that, if any of the claimants should refuse to accept the sums allowed, such sums should be

covered back into the city treasury. Petitioner refused to accept the allowance to him, and afterwards presented his claim to the council, which allowed it at $1,000, and ordered the controller to draw his warrant upon the city treasurer therefor. The controller refused so to do, and the circuit court issued a *mandamus* directing him to comply with the mandate of the common council.

Act No. 403, Local Acts 1893, under which relator was employed, provided that the board of health should have the power to appoint a health commissioner, a health officer, a plumber, and such sanitary, food, meat, and milk inspectors, and such clerks and subordinates, as might from time to time be required, and to prescribe the powers and determine the annual salary and compensation of " each and all herein referred to." It also provided that, " in case of pestilence or epidemic disease, or of danger from anticipated or impending pestilence or epidemic disease, or in case the sanitary condition of the city should be of such a character as to warrant it, it shall be the duty of the board of health to take such measures and to make such appointments, and to do and order and cause to be done such acts for the preservation of the public health (though not herein or elsewhere or otherwise authorized) as they may in good faith deem the public safety and health to demand." It further provided that the common council and board of estimates should annually include in their final estimate a sufficient sum of money for the maintenance of the board in performing the duties and obligations imposed by law upon such board, which sum should be raised by tax, and constitute the " Detroit Board of Health Fund; " that " the city treasurer is hereby appointed treasurer of said board of health, and shall, on check or voucher, pay out from time to time from said fund as may be required by said board of health." Detroit City Charter, pp. 190-194.

The act of 1895 empowered the board to appoint and dismiss all employés. It provided for the submission, annually, of estimates as to the amount required by said board, and that such sums, when so raised, should be ap-

propriated by said board for the purposes contemplated by the act; and that—

" In the presence of a great and imminent peril to the public health by reason of impending pestilence, the said board may report to the common council that, in its judgment, the security of the public health requires the expenditure of moneys in the then fiscal year in excess of the annual appropriation for the purposes of said board, as above provided, and the common council may thereupon cause to be placed to the credit of said board such sum of money as may be required, in the judgment of the council, such sum to be taken either from the contingent fund, or the same may be raised by temporary loan, payable within such time as the council may determine, not exceeding three years, and not exceeding in all the sum of one hundred thousand dollars. The money so raised or borrowed shall be paid into the city treasury, and shall constitute a fund to be known as the ' Public Health Fund,' and the same shall be paid out on vouchers approved by the board of health, and checks signed by the president and secretary of the board, drawn upon the city controller, who shall draw his warrant upon the city treasurer in favor of the person named as drawee in said check."

It further contained the provision, already referred to, that the new board should assume and pay all lawful claims and liabilities existing, at the time of the passage of the act, against the existing board of health of said city. It further provided that said board " may prescribe the duties and powers of the health officer, and of all inspectors, superintendents, or other subordinates or employés under them," may determine their number, and may fix the compensation, except that the aggregate amount shall not exceed the appropriation.

Clearly, under the provisions of both the old and the new act, it is the duty of the board to pass upon all claims made by its employés for compensation, and it was not contemplated that an employé might first submit his claim to the board of health, obtain its judgment, then refuse to accept the award, present the question in dispute to the common council, and obtain a different award.

The power to employ, fix the compensation, and pay, includes the authority to pass upon such claims as are made for compensation.  The question here is not whether, before suit brought against the city, the claim must be presented to the council, but it is whether, when so presented, the council may disregard the action of the board, review that action, set it aside, and increase the award from $252 to $1,000.  If it may be done in this instance, it may be done in every other.  The vested authority to fix the compensation of employés is taken away, and an important administrative function destroyed.  There is nothing peculiar in the circumstances attending this claim that should entitle the claimant to extraordinary relief.  The health fund may have been exhausted, but that does not affect the question of the proper method for determining the amount of the claim.  After the allowance of the claim by the board, it asked for an appropriation to pay the same, and the council promptly granted it.

The order directing the issue of the *mandamus* must be vacated.

The other Justices concurred.